1  Vanessa R. Waldref
2  United States Attorney
   Eastern District of Washington
3  Jeremy J. Kelley
   Dan Fruchter
4  Assistant United States Attorneys
5  Post Office Box 1494
   Spokane, WA 99210-1494
6  Telephone: (509) 353-2767
7

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 1 8 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

8                UNITED STATES DISTRICT COURT
9        FOR THE EASTERN DISTRICT OF WASHINGTON

10  UNITED STATES OF AMERICA,          2:24-CR-9-MKD
11
                    Plaintiff,         INDICTMENT
12
13        v.                           Vio:  18 U.S.C. § 371
                                             Conspiracy
14  CHERYL LYNN OBERG,                       (Count 1)
15
                    Defendant.               18 U.S.C. § 1343
16                                           Wire Fraud
17                                           (Count 2)
18
19                                           18 U.S.C. § 1957
                                             Money Laundering
20                                           (Counts 3-6)
21
22                                           18 U.S.C. § 1001
                                             False Statements
23                                           (Count 7)
24                                           18 U.S.C. § 981, 18 U.S.C.
                                             § 982, 28 U.S.C. § 2461
25                                           Forfeiture Allegations
26
27
28

INDICTMENT – 1

The Grand Jury charges:

## GENERAL ALLEGATIONS

1.    At all times relevant to this Indictment, the Defendant, CHERYL LYNN OBERG (OBERG), was a resident of Spokane County, Washington, in the Eastern District of Washington.

2.    The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans suffering economic hardship caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the Economic Injury Disaster Loan ("EIDL") program. EIDL is a Small Business Administration ("SBA") program that provides low-interest funding to small businesses, renters, and homeowners affected by declared disasters.

3.    In order to obtain an EIDL loan, a qualifying small business must submit an application to the SBA and provide information about its operations, including its number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was the year preceding January 31, 2020. The applicant must also certify that all the information in the application is true and correct to the best of the applicant's knowledge.

4.    The amount of an EIDL, if the application is approved, is determined based, in part, on the information provided in the application about employment, revenue, and cost of goods, as set forth above. Any funds issued under an EIDL are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

5.    EIDL applications are submitted online and received in cloud-based platforms. The location of the server through which the EIDL application is

INDICTMENT – 2

submitted is based on the date the application was processed by SBA and the application number. During the time period relevant to this Indictment, EIDL applications were received by an SBA contractor with servers located in Des Moines, Iowa.

6.    Once an SBA EIDL application is approved, the SBA's Denver Finance Center, located in Denver, Colorado, creates payment files and authorizes payments of the EIDL funds based on those applications. The disbursement of the EIDL funds are transmitted by the Financial Management System ("FMS") to the Treasury and then to the recipient's bank account. The primary server for the FMS is in Sterling, VA.

## The Scheme and Conspiracy

7.    The allegations in paragraphs 1 through 6 of this Indictment are incorporated as though realleged herein.

8.    Beginning no later than on or about November 16, 2020, and continuing through at least December 15, 2020, in the Eastern District of Washington and elsewhere, CHERYL LYNN OBERG and other conspirators, both known and unknown to the grand jury, devised and intended to devise a scheme to defraud the SBA, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

9.    Specifically, Defendant and other conspirators applied for an EIDL loan from the SBA using a stolen identity and false borrower information with the intent to defraud, steal, and convert the proceeds thereof to OBERG's personal use and the personal use of others and without any intent to use the proceeds thereof for any authorized purpose.

## Manner and Means

It was part of this scheme and conspiracy that:

10.    On or about November 16, 2020, Defendant and/or other conspirators submitted Application No. 3315300805 for EIDL Loan No. 9198458209 to the SBA

INDICTMENT – 3

in the amount of $150,000.  The loan application purported to seek funds on behalf of the Mississippi-based business Golden Triangle Periodontal Center LLC ("Golden Triangle"). The application originated from an IP address located near Portland, Oregon.

11.    In the application, Defendant and/or other conspirators falsely and fraudulently represented that the owner of Golden Triangle, J.S., was the signatory and primary contact submitting the application on behalf of Golden Triangle requesting an EIDL for Golden Triangle. Defendant and other conspirators stole and fraudulently used borrower information to complete the application, including J.S.'s name, date of birth, Social Security number, and personal address. Defendant and other conspirators stated that Golden Triangle had nine employees, revenue of $1,434,328 in 2019, cost of goods sold of $466,832 in 2019, and monthly revenue of $119,527.

12.    Defendant and other conspirators falsely and fraudulently signed the application in the name of J.S., falsely purporting to promise on J.S.'s behalf that Golden Triangle agreed to repay the SBA $150,000 plus interest over 30 years.

13.    Defendant and other conspirators listed false and fraudulent business contact information for Golden Triangle and J.S.:  phone number (662) 323-7111 and email address GoldenTriangle@workmail.com. This contact information is not and has never been associated with J.S. or Golden Triangle.

14.    Defendant and other conspirators directed that the EIDL proceeds be deposited in a Wells Fargo bank account ending in 7813.  The application falsely and fraudulently stated that the name on that bank account is Golden Triangle Periodontal Center LLC.  In fact, CHERYL LYNN OBERG is the sole owner of that bank account.

15.    Defendant and other conspirators certified that the information in the application was true and accurate, subject to criminal penalties for knowingly making false statements.

INDICTMENT – 4

16.    Each of the misrepresentations described above was materially false and fraudulent, and Defendant and other conspirators knew they were false and fraudulent at the time they were made. In fact, Defendant CHERYL LYNN OBERG was never associated with Golden Triangle and was therefore ineligible to receive EIDL funding on behalf of the business.

17.    On November 20, 2020, as a result of the fraudulent scheme described above, the SBA approved the application as EIDL No. 9198458209. On or about November 23, 2020, the SBA funded the EIDL in the amount of $150,000. Pursuant to the SBA Loan Authorization and Agreement, $100 was deducted as a third-party handling charge. The remaining $149,900 was then sent to Defendant's Wells Fargo account ending in 7813 located in Spokane, Washington in the Eastern District of Washington.

18.    On November 25, 2020, the EIDL funds of $149,900 were credited to Defendant CHERYL LYNN OBERG's personal Wells Fargo account ending in 7813. Before receiving the federal funds, the account was overdrawn with a balance of negative $877.72. Indeed, since July 2020, Defendant had overdrafted her account fifteen times and the account balance was often close to $0.

19.    Over the course of approximately the three weeks following the deposit of the EIDL funds, Defendant withdrew or spent nearly all of the $149,900. On November 25, 2020, the day the EIDL funds were deposited, Defendant withdrew $3,700 in cash from her account. On November 27, 2020, Defendant withdrew $10,000 at a Wells Fargo branch, withdrew $700 at an ATM, and purchased a cashier's check for $9,593.04. The cashier's check was subsequently used to pay off a loan on CHERYL LYNN OBERG's personal vehicle.

20.    On November 30, 2020, Defendant withdrew $700 in cash from an ATM. On December 1, 2020, Defendant withdrew $3,500 from a Wells Fargo branch. On December 2, 2020, Defendant withdrew another $700 in cash from an ATM. On December 3, Defendant withdrew $10,000 at Wells Fargo branch. On

INDICTMENT – 5

December 7, 2020, Defendant withdrew a total of $1,400 from three different ATMs in Spokane. On December 9, Defendant withdrew $700 in cash from an ATM. On December 14, Defendant purchased almost $5,000 in cryptocurrency. On December 15, Defendant withdrew another $700 in cash from an ATM.

21.    Defendant also wrote two large personal checks with the fraudulently obtained funds. The first was made out for $60,000 to "Michael Boudreaux," dated December 7, 2020, and signed by CHERYL LYNN OBERG; it cleared on December 10, 2020. The second was made out for $40,000 to "Ricky Hendrichsen," dated December 11, 2020, and signed by CHERYL LYNN OBERG; it cleared on December 15, 2020.

COUNT 1
(Conspiracy)

22.    The Grand Jury realleges and incorporates by reference paragraphs 1 through 21 as if fully set forth herein.

23.    Beginning no later than on or about November 16, 2020, and continuing until at least December 15, 2020, in the Eastern District of Washington, and elsewhere, the defendant, CHERYL LYNN OBERG and others known and unknown to the Grand Jury knowingly and willfully combined, conspired, and agreed to commit the following offenses:

  a. to make or present a claim to the SBA, knowing such claim to be false, fictitious, or fraudulent, in violation of 18 U.S.C. § 287;

  b. to devise a scheme or artifice to defraud, as described above, which caused the transmission by means of wire communication in interstate commerce of signals and sounds, in violation of 18 U.S.C. § 1343;

  c. to knowingly use, possess, or transfer a means of identification without lawful authority in relation to wire fraud, in violation of 18 U.S.C. § 1028A; and

INDICTMENT – 6

d. to knowingly engage in monetary transactions in criminally derived property of a value greater than $10,000 derived from specified unlawful activity, in violation of 18 U.S.C. § 1957.

24. In furtherance of the conspiracy and to accomplish its objects and purposes, Defendant CHEYL LYNN OBERG and her known and unknown co-conspirators, did commit, and cause to be committed, overt acts in the Eastern District of Washington and elsewhere, which included, without limitation, the following:

a. On or about November 16, 2020, Defendant CHERYL LYNN OBERG and her co-conspirators submitted EIDL Application No. 3315300805 to the SBA fraudulently claiming funds on behalf of company Golden Triangle and using the means of identification of J.S. without lawful authority.

b. On or about November 23, 2020, Defendant CHERYL LYNN OBERG and her co-conspirators caused an electronic funds transfer related to EIDL No. 9198458209 from FMS servers in Sterling, Virginia, to Wells Fargo account ending in 7813 in Spokane, Washington, in the amount of $149,900.

c. On or about November 27, 2020, Defendant CHERYL LYNN OBERG withdrew as cash $10,000 of the EIDL funds.

d. On or about November 27, 2020, Defendant CHERYL LYNN OBERG obtained a cashier's check in the amount of $9,593.04 from the EIDL funds that she used to pay off the loan on her 2013 Nissan Rogue.

e. On or about December 3, 2020, Defendant CHERYL LYNN OBERG withdrew as cash $10,000 of the EIDL funds.

f. On or about December 7, 2020, Defendant CHERYL LYNN OBERG wrote a check to order of Michael Boudreaux in the

INDICTMENT – 7

amount of $60,000, which resulted in the transfer of $60,000 in EIDL funds from the account of CHERYL LYNN OBERG.

     g.    On or about December 7, 2020, Defendant CHERYL LYNN OBERG wrote a check to order of Ricky ~~Henderson~~ Hendrichsen in the amount of $40,000, which resulted in the transfer of $40,000 in EIDL funds from the account of CHERYL LYNN OBERG.

*1/18/24 klo*

All in violation of 18 U.S.C. § 371.

## COUNT 2
### (Wire Fraud)

25.    The Grand Jury realleges and incorporates by reference paragraphs 1 through 21 as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated into this count as if fully set forth herein.

26.    On or about November 23, 2020, in the Eastern District of Washington and elsewhere, the Defendant, CHERYL LYNN OBERG, and other persons known and unknown to the Grand Jury, for the purpose of executing the Conspiracy described in Count 1 of this Indictment, and attempting to do so, did knowingly and with intent to defraud, based on materially false and fraudulent representations, omissions, pretenses, and promises, transmit and cause to be transmitted by means of wire communication in interstate commerce and foreign commerce the signals and sounds:

| Count | Date | Description |
|-------|------|-------------|
| 2 | On or about November 23, 2020 | Electronic funds transfer of $149,900 in EIDL funds for Loan No. 9198458209 transmitted via interstate wires from FMS servers in Sterling, Virginia, to Wells Fargo account ending in 7813 in Spokane, Washington, in the amount. |

In violation of 18 U.S.C. § 1343.

//

INDICTMENT – 8

COUNT 3-6
(Money Laundering)

27.    The Grand Jury realleges and incorporates by reference paragraphs through 21 as if fully set forth herein.  Further, the allegations in all other counts in the Indictment are re-alleged and incorporated into this count as if fully set forth herein.

28.    On or about the dates set forth below, Defendant CHERYL LYNN OBERG, knowing that the property involved in the transactions constituted, or was derived from, proceeds obtained from some criminal offense, did knowingly engage in the following monetary transactions in criminally derived property of a greater value than $10,000, that is, the withdrawal, deposit, and transfer of funds from and to the financial institutions identified below, and which property was derived from specified unlawful conduct, to wit wire fraud in violation of 18 U.S.C. § 1343 as alleged in Counts 2 herein:

| Count | Date | Amount | Type of Monetary Transaction |
|---|---|---|---|
| 3 | November 27, 2020 | $10,000.00 | Cash Withdrawal from Wells Fargo Acct. xxxxxxxx7813 |
| 4 | December 3, 2020 | $10,000.00 | Cash Withdrawal from Wells Fargo Acct. xxxxxxxx7813 |
| 5 | December 7, 2020 | $60,000.00 | Personal check #6517 issued from Wells Fargo Acct. xxxxxxxx7813 and credited to an ENT Credit Union account |
| 6 | December 11, 2020 | $40,000.00 | Personal check #6515 issued from Wells Fargo Acct. xxxxxxxx7813 and credited to a Bank of America account |

All in violation of 18 U.S.C. § 1957.

COUNT 7
(False Statements)

29.    The Grand Jury realleges and incorporates by reference paragraphs

INDICTMENT – 9

through 21 as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated into this count as if fully set forth herein.

30.    On or about August 11, 2022, in the Eastern District of Washington, in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, the Defendant, CHERYL LYNN OBERG, did knowingly and willfully make a false, fraudulent, and fictitious statement and representation, to wit CHERYL LYNN OBERG falsely stated to two Special Agents with the Federal Bureau of Investigation that OBERG used cash she had saved at her home for approximately five years to obtain a cashier's check she subsequently used to pay off a loan on her 2013 Nissan Rogue, when in fact OBERG had purchased the cashier's check using fraudulently-obtained EIDL proceeds from the scheme and conspiracy described above to pay off the automobile loan, in violation of 18 U.S.C. § 1001(a)(2).

## NOTICE OF FORFEITURE ALLEGATIONS

The allegations set forth in this Indictment are hereby realleged and incorporated herein by this reference for the purpose of alleging forfeitures.

Conspiracy

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the conspiracy offense in violation of 18 U.S.C. § 371, as set forth in Count 1 of this Indictment, the Defendant, CHERYL LYNN OBERG, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

MONEY JUDGMENT

A sum of money in United States currency, representing the amount of proceeds obtained by the Defendant as a result of the conspiracy violation.

INDICTMENT – 10

Wire Fraud

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the wire fraud offense in violation of 18 U.S.C. § 1343, as set forth in Count 2 of this Indictment, the Defendant, CHERYL LYNN OBERG, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.  The property to be forfeited includes, but is not limited to, the following:

MONEY JUDGMENT

A sum of money in United States currency, representing the amount of proceeds obtained by the Defendant as a result of the wire fraud violation.

Money Laundering

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of one or more of the monetary transaction offenses in violation of 18 U.S.C. § 1957, as set forth in Counts 3 - 6 of this Indictment, the Defendant, CHERYL LYNN OBERG, shall forfeit to the United States of America, any property, real or personal, involved in such offenses, and any property traceable to such property, including, but not limited to:

MONEY JUDGMENT

A sum of money in United States currency to equal the total amount of money involved in each violation as a result of the monetary transaction offenses.

If any of the property described above, as a result of any act or omission of Defendant, CHERYL LYNN OBERG:

a.    cannot be located upon the exercise of due diligence;
b.    has been transferred or sold to, or deposited with, a third party;
c.    has been placed beyond the jurisdiction of the court;
d.    has been substantially diminished in value; or
e.    has been commingled with other property which cannot be divided without difficulty,

INDICTMENT – 11

1  the United States of America shall be entitled to forfeiture of substitute property

2  pursuant to 21 U.S.C. § 853(p).

3

4       DATED this 18 day of January, 2024.

5

6                               A TRUE BILL

7

8

9

10  Vanessa Waldref

11  Vanessa R. Waldref
   United States Attorney

12

13

14  Jeremy J. Kelley
   Assistant United States Attorney

15

16

17  Dan Fruchter
   Assistant United States Attorney

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT – 12